358 So.2d 1263 (1978)
STATE of Louisiana
v.
Bryant M. JACKSON and Don L. Williams.
No. 61032.
Supreme Court of Louisiana.
May 22, 1978.
*1264 Milton P. Masinter, New Orleans, for Don Williams.
Orleans Indigent Defender Board for Bryant M. Jackson.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Brian G. Meissner, Asst. Dist. Atty., for plaintiff-appellee.
MARCUS, Justice.
Bryant M. Jackson and Don L. Williams were charged in the same information with the crime of simple burglary in violation of La.R.S. 14:62. After a joint trial by jury, defendants were found guilty as charged. After the convictions but prior to sentencing, the district attorney filed an information accusing Jackson of a previous felony conviction under La.R.S. 15:529.1 (Habitual Offender Law). After hearing, the court found Jackson to be an habitual offender and sentenced him to serve eighteen years at hard labor. Williams was sentenced to serve nine years at hard labor. Credit was given toward service of defendants' sentences for time spent in actual custody prior to imposition of sentences. On appeal, defendants rely on two assignments of error for reversal of their convictions and sentences.[1] Finding merit to Assignment of Error No. 1, we reverse the convictions and sentences.
In Assignment of Error No. 1, defendants contend the trial judge erred in curtailing their examination of prospective jurors on voir dire. They argue that they were thereby denied their right to full voir dire examination of prospective jurors as guaranteed by the state constitution.
At the commencement of the selection of the jury panel, twelve prospective jurors were called and sworn. Thereafter, the state examined the prospective jurors collectively with reference to the elements of the crime charged, the state's burden of proving defendants' guilt beyond a reasonable doubt, any relationship existing between any of the prospective jurors and defendants or counsel for either the state or defendants, and the prospective jurors' ability to serve in a fair and impartial manner. The panel was next examined collectively by counsel for Williams particularly concerning their attitudes toward the presumption of innocence, what constitutes guilt *1265 beyond a reasonable doubt, a defendant's right not to testify at trial, any affiliation with police organizations on the part of any of the prospective jurors, and their relationships with members of police organizations. Counsel for Williams further questioned the prospective jurors generally as to whether they could render a verdict without fear of criticism, whether they or members of their family had been victims of a simple burglary, and whether they were familiar with the details of the crime charged. Counsel for Jackson also examined the panel. At the conclusion of the examination of these twelve prospective jurors, nine were peremptorily challenged by the state and defendants. Nine additional prospective jurors were then called and sworn. They were questioned collectively by the state on substantially the same matters as the previous panel of prospective jurors. Counsel for Williams then examined them collectively relative to certain matters which had formed the basis for his examination of the first panel of prospective jurors. The trial judge interrupted this examination and the following colloquy occurred between the trial judge and counsel for Williams:
BY THE COURT:
Well, why don't we do it this way, Mr. Masinter. Ask them if they heard the questions that you asked the other jurors so we don't have to repeat all of these questions.
BY MR. MASINTER:
Your Honor
BY THE COURT:
Ask them if their questions would be the same.
BY MR. MASINTER:
Your Honor:
BY THE COURT:
I mean, we got to save time, sir.
BY MR. MASINTER:
But, it doesn't take that much longer:
BY THE COURT:
Yes, it does.
BY MR. MASINTER:
to ask just a few questions.
BY THE COURT:
I'm ordering you to do it that way, sir. Counsel for defendant Williams objected to the trial judge's ruling.[2] Thereafter, he attempted to comply with the ruling but was again warned by the trial judge that he was repeating questions previously asked to the earlier group of prospective jurors. The trial judge then stated: ". . . I'm ordering you not to do it again." When counsel for Williams reurged his objection, the trial judge replied: "You are wasting time." The nine prospective jurors were then examined by counsel for Jackson who likewise conformed his method of examination to that ordered by the trial judge. After one juror was excused on a challenge for cause by the state and six others by the exercise of peremptory challenges by the state and defendants, seven additional prospective jurors were called, sworn and examined by the state at which time the trial judge similarly instructed the prosecution to ask the panel if they had heard the questions previously addressed to the first panel of prospective jurors and if their answers would be the same. The prosecutor agreed. The trial judge stated: "Let's save some time here." When counsel for Williams began to examine the new panel, the following colloquy occurred between counsel for Williams and the trial judge:
BY MR. MASINTER:
Were you able to hear all the questions I asked who preceded you? Would your answers by substantially the same if those questions were asked of you? Is there:
BY THE COURT:
The people in the back can't hear you, Mr. Masinter. That is why I'm asking you to talk louder so you don't have to repeat.

*1266 BY MR. MASINTER:
Your Honor, I'm talking to these prospective jurors:
BY THE COURT:
You are talking to everybody in the panel:
BY MR. MASINTER:
Then, I would like:
BY THE COURT:
so you don't have to repeat. Put the microphone close to you so they can hear you better.
BY MR. MASINTER:
I would like to ask each question individually.
BY THE COURT:
You're not going to do it.
BY MR. MASINTER:
Please note an assignment of error.
BY THE COURT:
You already took that assignment of error. Why clutter up the record.
BY MR. MASINTER:
I hope not to clutter up the record, Your Honor.
BY THE COURT:
Well, you certainly are.
BY MR. MASINTER:
Well, in my opinion, I'm not:
BY THE COURT:
Proceed, and do as I say.
The remainder of the voir dire examination was conducted as ordered by the trial judge by asking the newly called prospective jurors if they had heard the questions previously asked to the first panel of prospective jurors and if their answers would be the same. This abbreviated method of conducting voir dire examination was continued until a jury of twelve persons was selected.
La.Const. art. 1, § 17 guarantees that "[t]he accused shall have a right to full voir dire examination of prospective jurors and to challenge jurors peremptorily." La. Code Crim.P. art. 786 further provides that the court, the state, and the defendant shall have the right to examine prospective jurors and the scope of the examination shall be within the discretion of the court. We have recognized that the purpose of voir dire examination is to determine qualifications of prospective jurors by testing their competency and impartiality. State v. Ford, 349 So.2d 300 (La.1977); State v. Nero, 319 So.2d 303 (La.1975). It is designed to discover bases for challenges for cause and to secure information for an intelligent exercise of peremptory challenges. State v. Ford, supra; State v. Sheppard, 263 La. 379, 268 So.2d 590 (1972). The scope of voir dire examination is within the sound discretion of the trial judge and his rulings will not be disturbed on appeal in the absence of a clear abuse of discretion. State v. Ford, supra; State v. Clark, 325 So.2d 802 (La.1976). However, although the trial judge is vested with discretion to limit the voir dire examination, he must afford wide latitude to counsel in the conduct of voir dire examination to effectuate the accused's right to full voir dire of prospective jurors embodied in La.Const. art. 1, § 17. State v. Holmes, 347 So.2d 221 (La. 1977); State v. May, 339 So.2d 764 (La. 1976). See State v. Monroe, 329 So.2d 193 (La.1976); State v. Brumley, 320 So.2d 129 (La.1975); State v. Crittle, 263 La. 418, 268 So.2d 604 (1972); State v. Hills, 241 La. 345, 129 So.2d 12 (1961). In order to determine whether a trial judge has in fact afforded a sufficiently wide latitude to the defendant in examining prospective jurors, a review of the trial judge's rulings should be undertaken only on the record of the voir dire examination as a whole. State v. Ford, supra; State v. Roach, 338 So.2d 621 (La. 1976); State v. Monroe, supra.
After a review of the record of the voir dire examination, we consider that the trial judge failed to afford sufficiently wide latitude to counsel for defendants in their examination of prospective jurors on voir dire. The record does not reflect that, prior to the commencement of voir dire, the trial judge instructed the prospective jurors that they were to listen carefully to the questions directed by the prosecutor and the defense to the first panel of prospective jurors so that they might later indicate their understanding of those questions. However, despite this lack of instruction, *1267 the trial judge ordered defense counsel to limit their examination of subsequently called prospective jurors to matters previously covered on voir dire by questioning the prospective jurors collectively concerning whether they had heard and understood the questions earlier asked. The record does not demonstrate that the prospective jurors, with the exception of those examined to fill the last remaining vacancy on the jury panel, affirmatively indicated that they had heard and understood the questions asked earlier during voir dire. By so restricting the voir dire examination, the trial judge effectively prohibited defense counsel from probing into the prospective jurors' understanding and attitudes concerning pertinent legal issues which had been previously covered during voir dire examination and thereby hindered the defense in the discovery of bases for challenges for cause and the securing of information for an intelligent exercise of peremptory challenges. Thus, defendants were denied their right to full voir dire examination of prospective jurors as guaranteed by La.Const. art. 1, § 17. Under the facts and circumstances of this case, we conclude that the trial judge abused his discretion in curtailing defendants' voir dire examination of prospective jurors. Accordingly, we must reverse defendants' convictions and sentences and remand the case to the trial court for a new trial.

DECREE
For the reasons assigned, the convictions and sentences are reversed, and the case is remanded to the trial court for a new trial.
SUMMERS, J., dissents.
NOTES
[1] Defendants have neither briefed nor argued Assignment of Error No. 2. Therefore, we consider this assignment of error to have been abandoned. State v. Blanton, 325 So.2d 586 (La.1976); State v. Carlisle, 315 So.2d 675 (La. 1975).
[2] La.Code Crim.P. art. 842 provides that, if an objection has been made when more than one defendant is on trial, it shall be presumed, unless the contrary appears, that the objection has been made by all the defendants. In the instant case, although the objection to the ruling of the trial judge was made only by Williams, it will be presumed to have been made by Jackson as well since the record does not reflect the contrary.