457 So.2d 610 (1984)
STATE of Louisiana
v.
Frasher WILLIAMS.
No. 84-KA-0138.
Supreme Court of Louisiana.
October 15, 1984.
Rehearing Denied November 15, 1984.
*611 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., William R. Campbell, Jr., Beryl McSmith, Asst. Dist. Attys., for plaintiff-appellee.
Elizabeth Cole, Supervisor, Tulane Law Clinic, Richard Ackerman, Student, Tulane University School of Law, Tulane Criminal Law Clinic, New Orleans, for defendant-appellant.
MARCUS, Justice.
Frasher Williams was charged by bill of information with aggravated arson in violation of La.R.S. 14:51. After trial by jury, he was found guilty as charged. The state then filed an information accusing defendant of being an habitual offender under La.R.S. 15:529.1 (Habitual Offender Law). After a hearing, the trial judge found defendant to be a second felony offender and sentenced him to serve six and two-thirds years at hard labor. On appeal, defendant relies on nine assignments of error for *612 reversal of his conviction and sentence.[1] Seven of these assignments of error do not represent reversible error nor do they involve legal issues not governed by clearly established principles of law. They will be treated in an appendix which will not be published but which will comprise a part of the record in this case. The two remaining assignments of error involve an asserted restriction on defense counsel's voir dire examination of prospective jurors (Assignment of Error No. 2) and the sufficiency of the evidence to support defendant's conviction (Assignment of Error No. 12).

FACTS
The events leading up to defendant's conviction arose from his relationship with Naomi Stevenson, who worked as a maid at the London Lodge Motel on Airline Highway in New Orleans. Defendant had visited Ms. Stevenson at the motel on several occasions and was seen there by the owners at various times. On October 19, 1980, Hose LaFleur, Jr., one of the co-owners of the motel, called a taxi for Ms. Stevenson at the end of her shift. Fifteen minutes after she left, defendant appeared at the motel demanding to see Ms. Stevenson. LaFleur told defendant that Ms. Stevenson had left for the day and was no longer at the motel. According to LaFleur, defendant became insistent, apparently not believing him, and threatened, "If you don't want me to talk to Naomi, I'm going to burn the damn place down." LaFleur then ordered defendant off his property. Later that evening, defendant called the motel and demanded to speak to Ms. Stevenson. Again, after being informed of her absence, defendant threatened to burn the place down. Less than an hour later, defendant called the motel again and made the same demand. LaFleur repeatedly told him that Ms. Stevenson was not at the motel, and defendant responded with the same threat: "If you don't let me talk to Naomi, I'm going to burn the ... place down." After that call, LaFleur called the police and reported the threats of arson. A police officer came to the scene and a report was made.
The next morning, at about 8:30, defendant was seen walking past the motel toward a gas station with a plastic milk container in his hand. A short time later, defendant returned to the motel, still carrying the container. Paul Stevens, another co-owner of the motel, became concerned, called the police, and began to follow defendant. He saw defendant pour a liquid from the container onto the ground next to the motel, take a match, and set the liquid on fire in two different places. Flames rose two or three feet into the air, and the grass against the side of the building burned. The building was a part of the motel where rooms were located and was constructed of brick and wood. The flames made contact with the building and scorched the wall. Stevens ran to the fire and began stomping it out. Meanwhile, defendant had continued walking down the motel building pouring the liquid out of the container. Defendant made no attempt to flee the scene. Shortly thereafter, the police arrived and placed defendant under arrest. He was identified by Stevens as the man who started the fires. The estimated damage to the wall of the motel building was ten dollars.

ASSIGNMENT OF ERROR NO. 2
Defendant contends the trial judge erred in curtailing his examination of prospective jurors during voir dire with regard to their understanding of defendant's right not to testify. He argues that he was thereby denied his constitutional right to a full voir dire examination.
After commencement of the jury selection and prior to questioning, the trial judge instructed the entire jury panel to listen to what the attorneys said to the first set of prospective jurors in order to avoid unnecessary repetition. The entire panel *613 was told that if they could not hear, did not understand, had questions, or had answers that were different, then they were to let the attorneys know. Both the trial judge and defense counsel instructed the panel about defendant's right not to testify. This instruction included reference to the state's burden of proof, the presumption of innocence, and the right of defendant not to take the stand in his own behalf. It was repeated on several occasions throughout the voir dire. As each new set of jurors entered the jury box, the trial judge directed a standard set of questions to them, asking if they were able to hear everything that was said to the other jurors, if they could accept all principles of law given, if they understood everything, and if their answers would be different. Also, defense counsel was allowed to ask each prospective juror if he could accept defendant's right not to testify and not to consider it in determining his guilt. Throughout the entire voir dire, all of the jurors indicated that they could accept and apply the law and not hold it against defendant if he did not testify. However, during the latter part of voir dire, when defense counsel sought to inquire into a juror's past service on another jury and the instruction given about the defendant not taking the stand, the trial judge interrupted stating, "We're not going to repeat all that ...," and, over defense counsel's objection, stated:
Please note for the record that counsel has been permitted on two previous occasions to explore the entire realm of reasonable doubt and the Defendant not testifing [sic], as well as, jurors being informed that fact by the Court. The Court feels this is repetitious, its already been covered....
The trial judge went on to state that defense counsel should ask if prospective jurors heard what had been said to the others and if they could accept and apply the principles of law explained earlier. On several occasions, the trial judge did limit defense questions directed at what a juror would be "thinking" if defendant did not testify. However, the trial judge then proceeded to instruct the juror on the proper law relative to defendant's right not to testify.
La. Const. art. 1, § 17 guarantees that "[t]he accused shall have a right to full voir dire examination of prospective jurors and to challenge jurors peremptorily." La.Code Crim.P. art. 786 further provides that the court, the state, and the defendant shall have the right to examine prospective jurors, and the scope of the examination shall be within the discretion of the court. The purpose of voir dire examination is to determine the qualifications of prospective jurors by testing their competency and impartiality. It is designed to discover bases for challenges for cause and to secure information for an intelligent exercise of peremptory challenges. The scope of voir dire examination is within the sound discretion of the trial judge and his rulings will not be disturbed on appeal in the absence of a clear abuse of discretion. In order to determine whether a trial judge has in fact afforded a sufficiently wide latitude to the defendant in examining prospective jurors, a review of the trial judge's rulings should be undertaken only on the record of the voir dire examination as a whole. State v. Jackson, 358 So.2d 1263 (La.1978).
While it may have been improper for the trial judge to limit the individual questioning of prospective jurors on their understanding of defendant's right not to testify, it is evident from the record of the entire voir dire that the jurors were questioned, properly instructed and indicated their understanding of defendant's right not to testify. Many of the questions of defense counsel were unnecessarily repetitious. After reviewing the rulings of the trial judge on the record of the voir dire examination as a whole, we are satisfied that he afforded sufficient latitude to defense counsel in examining prospective jurors.
Assignment of Error No. 2 is without merit.

*614 ASSIGNMENT OF ERROR NO. 12
Defendant contends there was insufficient evidence to support his conviction for aggravated arson. Specifically, he argues that scorching is not sufficient evidence of damage to the building.
The question presented is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Moore, 419 So.2d 963 (La. 1982). La.R.S. 14:51 defines aggravated arson as the intentional damaging by setting fire to any structure whereby it is foreseeable that human life might be endangered.
In the instant case, defendant poured gasoline onto the ground next to the wall of an occupied motel and ignited it. The flames made contact with the wall, which was composed of brick and wood, and scorched it, causing damage to the building estimated at about ten dollars. Although the damage to the building was slight, it is sufficient to support the conviction. Additionally, there was ample evidence that defendant intended to damage the property by setting fire to it and that it was foreseeable to him that human life might be endangered. Hence, there was sufficient evidence for a rational trier of fact to convict defendant of aggravated arson.
Assignment of Error No. 12 is without merit.

DECREE
For the reasons assigned, defendant's conviction and sentence are affirmed.
DIXON, C.J., and DENNIS, J., dissents with reasons.
CALOGERO, J., dissents being of the view that Assignment of Error No. 2 is meritorious.
LEMMON, J., subscribes and assigns additional reasons.
DIXON, Chief Justice (dissenting).
I respectfully dissent.
I cannot agree that defendant was accorded the right of "full voir dire examination" under La. Const. article 1, § 17. Nor is there any evidence in this record of "setting fire to any structure," as arson is defined in R.S. 14:51. The only damage to the building was a small scorched area of the brick exterior. The defendant is surely guilty of some offense, but not of aggravated arson.
DENNIS, Justice, dissenting.
I respectfully dissent.
The trial court repeatedly prevented the defense counsel from questioning prospective jurors as individuals, rather than as a panel, on certain significant questions. Under our previous jurisprudence interpreting the state constitutional guarantee of the right to full voir dire, the trial judge's actions constituted reversible error. In State v. Dixon, 365 So.2d 1310 (La. 1979), for example, we said:
Whatever else the right entails, it certainly includes addressing, hearing and observing the veniremen directly and as individuals. Otherwise, it would be difficult for counsel to judge whether a particular venireman in a group had given his own answer truthfully and candidly or if, in fact, he had answered at all. Because of the difficulty of the concepts and values which must be understood and applied by each juror in his deliberations, counsel for each side is entitled to an opportunity to assess the personality and comprehension of each prospect as a unique human being before accepting him as a juror or challenging him for cause or peremptorily. To relegate the defendant's attorney to the role of asking the veniremen en masse for an evaluation of whether they would answer "substantially" as other jurors clearly deprives him of essential insights into the understanding and attitudes of each prospective juror and denies his client *615 the right to full voir dire. State v. Jackson, [358 So.2d 1263 (La.1978)] supra. See, State v. Boen, [362 So.2d 519 (La. 1978)] supra; State v. Hills, [241 La. 345, 129 So.2d 12 (1961)] supra.
The majority should have: (a) rebuked the trial court for not following this interpretation of our state constitution; or (b) acknowledged that it had chosen to follow the trial judge in overruling or distinguishing all of our prior voir dire opinions. In either case, the majority should have taken notice of the relevant precedents, discussed them, and given good reasons for adhering to or breaking with them.
As a supreme court, this court should bear in mind that it is no longer the sole criminal appellate tribunal but that it has the responsibility for the authoritative interpretation of the law and the constitution for 48 intermediate court judges as well as 161 district judges with criminal jurisdiction.
LEMMON, Justice, subscribing to the opinion and assigning additional reasons.
Although the question is very close, I agree that the instances of voir dire limitation did not produce constitutional error.[1] Compare State v. Duplessis, 457 So.2d 604 (La.1984), decided this day. However, trial judges who wish to avoid retrials would do well to remember that the accused is constitutionally entitled to a voir dire examination which will enable him to exercise intelligently his peremptory challenges, as well as challenges for cause, and that counsel is accordingly entitled to develop information beyond a juror's mere willingness to follow stated law.
The principal reason I am writing separately is to emphasize that we are declining to construe the Louisiana arson statutes only according to traditional common law notions of fire-caused property damage that results in some actual "wasting" (as opposed to "scorching") of the structure. See R. Perkins, Criminal Law, Ch. 3, § 2B (2nd Ed.1969). Instead, we hold that aggravated arson occurs under La.R.S. 14:51 when:
1. There is the slightest damage to: a structure, a watercraft, or a movable; and
2. The damage is caused either by (a) the intentional use of an explosive substance or (b) the intentional setting of a fire; and
3. The intentional criminal act (using an explosive substance or setting a fire which results in damage) creates a foreseeable possibility that human life will be endangered.[2]
When the statute is thus construed, the gravaman of the completed offense is any damage to certain types of property (structure, watercraft or movable) caused by a prohibited act (intentional use of explosives or setting of fire) which foreseeably endangers human life.[3] This simple and straightforward *616 construction avoids many technical problems encountered in other states.
NOTES
[1] Defendant has neither briefed nor argued Assignments of Error Nos. 3, 5, 6 and 13. Hence, we consider them to have been abandoned. State v. Carlisle, 315 So.2d 675 (La.1975); State v. Edwards, 261 La. 1014, 261 So.2d 649 (1972).
[1] During the voir dire examination, the trial judge did unduly restrict defense counsel in several instances from using open-ended questions in order to elicit a response from the prospective juror as to his feelings on the presumption of innocence. However, counsel was perceptive enough to use other methods of questioning the prospective juror in order to obtain the information sought. Thus, while the trial judge on several occasions unduly limited defense counsel to questions relating to whether the juror could follow the law on presumption of innocence and did not permit questions which would have allowed the juror to express personal attitudes toward the presumption, the entirety of the voir dire examination reveals that defense counsel had adequate opportunity to probe for challenges for cause and to intelligently exercise peremptory challenges.
[2] Even under the statutory construction that more than "scorching" is required, this defendant damaged the motel wall by igniting an explosive substance (gasoline). Nevertheless, the clearest and simplest construction is that the criminal consequence requirement of aggravated arson is satisfied by proof of any damage by fire or explosive substance "whereby it is foreseeable that human life might be endangered". Presumably, this same construction will be applied to simple arson and arson with intent to defraud in cases where there is no foreseeable danger to human life. See La.R.S. 14:52 and 53.
[3] The slightness of the damage is a factor which may be considered by the court in determining sentence.