680 So.2d 37 (1996)
STATE of Louisiana, Appellee,
v.
Consuela Gaines THOMAS, Defendant-Appellant.
No. 95-1646.
Court of Appeal of Louisiana, Third Circuit.
May 8, 1996.
*38 Morgan J. Goudeau, III, Opelousas, Gary C. Tromblay, Houma, for State of Louisiana.
Edward J. Lopez, Opelousas, for Consuela Gaines Thomas.
Before DOUCET, C.J., and THIBODEAUX and DECUIR, JJ.
DOUCET, Chief Judge.
This appeal seeks review of the convictions and sentences of Gordon Ray Thomas and his wife, Consuela Gaines Thomas. The defendants were involved in an armed escape from the St. Landry Parish Courthouse, theft of a court reporter's automobile, and a meandering journey through the South until the couple was captured in Tybee Island, Georgia, eight days later. This escapade garnered extensive publicity, both local and nationally. After their capture, the couple was extradited to Louisiana to face three felony charges: aggravated escape, armed robbery, *39 and possession of a firearm by a convicted felon.
Jury selection was on May 4, 1995, and trial was on May 15, 1995. The jury convicted both defendants of all three charges. Consuela Thomas and Gordon Thomas were sentenced on August 18, 1995. Thereafter, the state filed a second Habitual Offender bill of information against Gordon Thomas. After a hearing conducted on October 25, 1995, Gordon Thomas was adjudicated a second Habitual Offender, and on November 9, 1995, the trial court vacated two of the original sentences and resentenced him.
On appeal, the defendants have assigned the same four errors. We reverse.

FACTS
Gordon Ray Thomas, hereinafter referred to as Gordon, had been convicted of four counts of armed robbery and knew he was to be sentenced on November 10, 1994, to twenty years at hard labor without benefit of probation, parole or suspension of sentence. During the proceedings in the courtroom, Deputy Calvin Moore noticed that Gordon was sitting by the aisle and talking with a black female; this female was Consuela Gaines Thomas, Gordon's girlfriend, hereinafter referred to as Consuela. At noon, the courthouse recessed for lunch and Mrs. Evelyn Batton and her friend, Mrs. Madelon Chachere, were on their way to lunch. The two court reporters were waiting in the parking lot in Mrs. Batton's 1990 four-door blue Cadillac Brougham while the prisoners were being escorted through the courthouse parking lot. Gordon was at the end of the line of prisoners being escorted by Deputies Moore and Fogleman from the courthouse to the jail.
Suddenly, Consuela confronted Deputy Moore with a sawed-off shotgun and demanded he remove the handcuffs from Gordon. After the handcuffs were removed from Gordon, Consuela gave the shotgun to Gordon and pulled a handgun out of her shoulder bag. The couple ran to the Cadillac where Mrs. Batton and Mrs. Chachere were waiting.
Evelyn Batton and Madelon Chachere were chatting in Mrs. Batton's car while the prisoners passed by. Mrs. Batton testified that Gordon began to knock on her car door, telling her "I want your car. Get out or you'll get hurt." She recognized Gordon from the sentencing. After Mrs. Batton got out of the car, Gordon again confronted her with the shotgun and demanded her car keys. As Mrs. Batton was getting out of her car, Madelon Chachere saw Consuela enter the back seat of the car. Mrs. Chachere got out of the car. Judge Robert Brinkman, who was in the parking lot of the courthouse, witnessed these events.
After Gordon and Consuela got in the Cadillac, they fled Opelousas. The daring daytime escape led to an eight day cross-country journey from Opelousas, through Shreveport, Arkansas, and Tennessee, to Tybee Island, Georgia, where the couple was captured on November 18, 1995. Their capture on Tybee Island resulted in numerous criminal charges being filed against the couple in Georgia, but these charges were dropped so the defendants could be more quickly extradited to Louisiana.
When the couple was returned to Louisiana, they were charged, in state court, with aggravated escape, armed robbery and possession of a firearm by a convicted felon. The two defendants were also charged in federal court with Receiving and Possessing an Illegal Firearm, Interstate Transportation of a Stolen Motor Vehicle, and Possession of a Firearm by a Felon. They were convicted on April 18, 1995, on the federal charges.
The defendants' trial on state charges was conducted on May 15, 1995. Because the district judges of St. Landry parish either witnessed the crimes or employed some of the victims or witnesses of the crimes, Judge Preston Aucoin was appointed to preside over the trial. Both defendants were found guilty as charged. The defendants were both sentenced on August 18, 1995, but a Habitual Offender Bill was filed against Gordon. Consuela Gaines Thomas was sentenced to a fine of $3,000 plus a total term of imprisonment of seventy-two (72) years: Count 1armed robberysixty (60) years at hard labor without benefit of probation, parole or suspension of sentence; Count 2 aggravated escapeseven (7) years at hard *40 labor, to be served consecutively with the sentence for Count 1; and Count 3possession of a firearm by a convicted felonfive (5) years at hard labor without benefit of probation, parole or suspension of sentence, to be served consecutively with the sentences for Counts 1 and 2. After the habitual offender hearing conducted on October 15, 1995, his first sentence was vacated and Gordon was resentenced on November 9, 1995. Gordon Ray Thomas was resentenced to a fine of $3,500 plus a total term of imprisonment of one hundred and eight (108) years: Count 1armed robberyninety (90) years at hard labor, without benefit of probation, parole or suspension of sentence; Count 2 aggravated escapetwelve (12) years at hard labor, without benefit of probation, parole or suspension of sentence, to be served consecutively with the sentence for Count 1; and Count 3possession of a firearm by a convicted felonsix (6) years at hard labor without benefit of probation, parole or suspension of sentence, to be served consecutively with the sentences for Counts 1 and 2.

ERRORS PATENT
A review of the record reveals an error patent concerning Gordon Ray Thomas's sentence as a second habitual offender. The three crimes of the defendant were part of a continuing criminal episode lasting a few minutes on November 10, 1994; however, the trial judge resentenced Gordon as a habitual offender on each of the three convictions. In State ex relator Porter v. Butler, 573 So.2d 1106 (La.1991), the Louisiana Supreme Court reaffirmed its earlier interpretation that if a habitual offender is convicted of more than one crime on the same day for criminal conduct arising out of a single transaction or criminal episode, then only one of the convictions may be used to enhance the defendant's sentences.
... [P]olicy considerations support the continued viability of the rule precluding habitual offender enhancement of more than one conviction obtained the same date arising out of a single criminal act or episode. Severe penalty enhancement statutes must be strictly construed. State ex relator Jackson v. Henderson, [283 So.2d 210 (La.1973)]; State v. Duncan, 219 La. 1030, 55 So.2d 234 (1951). The purposes of the habitual offender statute to discourage commission of successive felonies and to enhance punishment for subsequent felonies are not served by enhancing punishment for multiple offenses arising out of one incident of criminal conduct. Multiple convictions obtained the same day for offenses arising out of one criminal episode should be considered as one conviction for purposes of applying the habitual offender law in sentencing.
Id. at 1109. See also, State v. Hongo, 625 So.2d 610 (La.App. 3 Cir.1993), writ denied, 93-2774 (La. 1/13/94); 631 So.2d 1163.
Therefore, the trial judge erred when he enhanced all three of Gordon's sentences upon adjudication as a second felony offender. The trial judge also erred by imposing a fine since this penalty is not provided in the habitual offender statute. State v. Dickerson, 584 So.2d 1140 (La.1991). Furthermore, the trial judge sentenced Gordon for his conviction of aggravated escape to a term of imprisonment of twelve years at hard labor without benefit of probation, parole or suspension of sentence. La.R.S. 15:529.1(G) provides that any sentence imposed under the provisions of the Habitual Offender act shall be without benefit of probation or suspension of sentence. However, parole is still available to habitual offenders.
Inasmuch as we have found reversible error in one of defendants' allegations of error, we mention the foregoing simply to avoid the same mistake being made in the future, should the results of defendants' next trial produce the same results.
We find no errors patent concerning Consuela Gaines Thomas.

ASSIGNMENT OF ERROR NO. 1
By their first assignment of error the defendants both contend that the trial court denied them their right to full voir dire as guaranteed by the constitution of Louisiana. The arguments of both defendants are identical on this issue. This assignment of error presents reversible error; in that the actions of the trial judge so limited the parties in voir dire that he effectively denied the defendants their right to voir dire guaranteed by *41 the constitution and code of criminal procedure of this state.
In State v. Hall, 616 So.2d 664 (La.1993), the Louisiana Supreme Court reversed a conviction in a case in which the trial judge unduly limited voir dire examination. In Hall, the court set forth the basic principles governing voir dire stating:
La. Const. art. 1, § 17 guarantees that `[t]he accused shall have a right to full voir dire examination of prospective jurors and to challenge jurors peremptorily.' La. Code Crim.P. art. 786 further provides that the court, the state and the defendant shall have the right to examine prospective jurors and the scope of the examination shall be within the discretion of the court. The purpose of voir dire examination is to determine qualifications of prospective jurors by testing their competency and impartiality. It is designed to discover bases for challenges for cause and to secure information for an intelligent exercise of peremptory challenges. The scope of voir dire examination is within the sound discretion of the trial judge and his ruling will not be disturbed on appeal in the absence of a clear abuse of discretion. However, although the trial judge is vested with discretion to limit the voir dire examination, he must afford wide latitude to counsel in the conduct of voir dire examination to effectuate the accused's right to full voir dire of prospective jurors embodied in La. Const. art. 1, § 17. In order to determine whether a trial judge has in fact afforded a sufficiently wide latitude to the defendant in examining prospective jurors, a review of the trial judge's rulings should be undertaken only on the record of the voir dire examination as a whole. State v. Williams, 457 So.2d 610 (La.1984); State v. Jackson, 358 So.2d 1263 (La.1978).
After a review of the record of the entire voir dire examination, we find that the trial judge failed to temper the exercise of his discretion by giving the "wide latitude" to counsel for defendant in his examination of prospective jurors, as required by our cases. State v. Frith, 412 So.2d 1000 (La.1982); State v. Hayes, 364 So.2d 923 (La.1978); State v. Boen, 362 So.2d 519 (La.1978); State v. Jackson, 358 So.2d at 1267. Rather, the trial judge displayed a "grudging attitude" toward the defense's questions, an attitude we disapproved of in State v. Duplessis, 457 So.2d 604, 607 (La. 1984) (`the trial judge displayed a grudging attitude toward the asking of those proper questions, resulting in the appearance before the jury that defense counsel was wasting time on frivolous technical defenses.').
Most objectionable in our view was the trial judge's restriction of defense counsel's examination on issues of law, such as elements of the offense, reasonable doubt and specific intent. Counsel was allowed to read the statutory definitions of pertinent offenses and managed some discussion of these issues, but the pattern of the rulings clearly impaired defense efforts to plumb the prospective juror's understanding of the nuances of applicable law and legal principles. This ability to understand the law was particularly critical in a case such as the present one, where the facts were virtually undisputed and the case would turn on issues such as whether the killing was manslaughter or murder and whether there was evidence to support the elements of first degree murder. Nonetheless, the trial judge curtailed the defense's efforts to explore with the jurors the concept of reasonable doubt as it related to specific intent to kill more than one person and refused to allow the defense to explore the jurors' ability to accept manslaughter, insisting to counsel that the only relevant question was whether the jurors could accept the law as given to them by the court.
The trial judge's limitation of the defense's questioning to whether the jurors would accept the law as given has never been favored in our law. Rather, this court has rejected the contention that unjustified restrictions on voir dire can be cured by a response on the part of a prospective juror that he will follow the law as given to him by the judge when the juror is unaware of the complexity of the law and where that law involves such a basic right of the defendant. State v. Lee, 559 So.2d 1310, 1316 (La.1990); State v. Brumley, 320 So.2d 129 (La.1975). Counsel *42 must be permitted to informally question the juror of his own experiences and attitudes that may influence his ability to follow the law. A juror's response to less imposing questions may well reveal attitudes and biases not disclosed by superficially correct answers. State v. Lee, 559 So.2d at 1316; State v. Hayes, 364 So.2d at 924; State v. Hills, 241 La. 345, 129 So.2d 12, 31 (1961) (on rehearing).
Accordingly, we find the trial judge's limitation on the defense's ability to examine prospective jurors on their understanding of the law constitutes reversible error.
Id. at 668-669.
A review of the entire voir dire examination in the present case reveals that it is very similar to the situation in Hall, if not worse. Beginning when the assistant district attorney started his voir dire examination of the first panel of twenty prospective jurors, the trial judge informed him that he would limit the prosecutor's ability to question the jurors individually. The prosecutor would have to address questions concerning the prospective jurors' knowledge of the case collectively; that is, his questions must be addressed to all of the prospective jurors, and then depending upon their show of hands, he could ask questions individually. The prosecutor did not object to this limitation, nor did he object later when the trial judge refused to allow him to read to the second panel of prospective jurors the statutory definitions of aggravated escape, armed robbery, possession of a firearm by a felon and the law of principals. Instead, the prosecutor had to ask the panel of prospective jurors if they had heard him read the definitions to the first panel of prospective jurors and if any of them had problems with the law.
The situation got worse when the defendants attempted to conduct voir dire of the prospective jurors. When Mr. Edward Lopez, counsel for Consuela Gaines Thomas, was not allowed to question the prospective jurors individually on their prior knowledge of the case, he objected. The defendants' crimes had generated considerable local and even national publicity; in the relatively small parish of St. Landry most citizens knew someone who had witnessed the events and many had discussed the matter with the witnesses. Even the trial judge noted eighty to ninety percent of the prospective jurors knew about the case from the news media or from talking with friends and family. Yet, the trial judge ordered Mr. Lopez to ask questions collectively and then limit his questions to those individuals who indicated, by raising their hands, that their prior knowledge would affect their judgment in the case. Mr. Lopez's objections to the limitation on the right to voir dire were joined by Mr. Wagley, counsel for Gordon Ray Thomas. Further, when Mr. Lopez would question the jurors in a manner not acceptable to the trial judge, the trial judge would question the jurors himself and then order Mr. Lopez to move on. Eventually, the trial judge limited even Mr. Lopez's collective questioning of the second panel of prospective jurors.
The trial judge further limited the amount of time the two defense counsel had to confer with their clients and among themselves about their exercise of challenges for cause and peremptory challenges to five minutes; the attorneys for both defendants objected stating five minutes was insufficient time for them to decide which members of the panel of twenty prospective jurors should be challenged. Finally, when the defendants objected to the state exercising peremptory challenges to excuse blacks from the jury, the trial judge did not follow the proper procedure for handling a Batson objection, but simply ruled, without ever requiring the state to give its race-neutral reasons for the peremptory challenges, that the state did not violate Batson. Although the defendants objected to this failure to follow the requirements for Batson, they have not assigned it as error. However, we include this failure to follow the well settled procedure for ruling upon such an objection to illustrate the trial judge's dictatorial handling of the voir dire process. When the defendants both exhausted all of their peremptory challenges during the examination of the second panel, they again objected to the trial judge's limitations upon their right to full voir dire, arguing his rulings prevented them from being able to intelligently select which prospective jurors to challenge.
*43 The facts of the present case establish that both the state and the defendants were denied their rights under La. Const. art. 1, § 17, and La.Code Crim.P. art. 786, to full and effective voir dire. The state did not object to the trial court's limitations upon its rights and in its appellate brief argues that any error on the part of the trial judge should be considered harmless in light of the entire voir dire examination. La.Code Crim.P. art. 921 provides: "A judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity, or variance which does not affect substantial rights of the accused." The right to voir dire is guaranteed by both the state constitution, La. Const. art. 1, § 17, and code of criminal procedure, La.Code Crim.P. art. 786. In Hall, 616 So.2d 664, the supreme court noted that a conviction will not be reversed in the absence of a clear abuse of discretion on the part of the trial judge, and the determination of whether there has been an abuse must be made on the entire voir dire and not selected passages or questions.
Upon examination of the entire voir dire as a whole, it is apparent that the trial judge so limited the defendants in their examination of prospective jurors to effectively deny them their constitutional and statutory rights to full and meaningful voir dire. Further, the trial judge displayed a grudging attitude toward counsel for the defendants when they attempted to exercise their rights and when they attempted to make a record of their objections to his rulings. Because this case generated so much publicity, by the trial judge's own estimations eighty to ninety percent of the prospective jurors knew about the crime, the defendants should have been able to fully question the jurors about the extent of their prior knowledge in order that they could intelligently exercise peremptory challenges or challenges for cause. On the issue of determining the prospective jurors' ability to understand, apply and follow the law, the trial judge also effectively denied both the state and the defendants any meaningful voir dire. We find the trial judge's actions to constitute reversible error, and thus we are compelled to reverse the defendants' convictions, vacate their sentences, and remand for a new trial. We find this action very difficult to take since the evidence of the defendants' guilt is overwhelming (see our discussion of Assignment of Error #3, infra). However, the trial judge's actions effectively denied the defendants and the state their right to the full voir dire examination of prospective jurors guaranteed by our constitution.
ASSIGNMENT OF ERROR NO. 3
Even though we have found the trial judge committed reversible error in the manner in which he limited voir dire examination and we have ordered a new trial for the defendants, the defendants' claims of insufficient evidence to support their convictions must be addressed. The Louisiana Supreme Court does not allow courts of appeal to pretermit a Jackson review since a defendant who prevails on this issue may be entitled to retrial on a lesser included offense or discharge if the State's evidence was insufficient. State v. Morris, 615 So.2d 327 (La.1993).
The assignments of error set forth by the defendants are identical and their arguments on the first two assignments of error are identical, but their argument on this assignment of error differ. Consuela argues that the evidence is insufficient to support her conviction of armed robbery. Gordon, on the other hand, claims, in a one-sentence argument, that due to the overlapping nature of each of the charges and the issue as to when one offense ended and another began, each and every essential element necessary to prove his guilt has not been proved.
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Duncan, 420 So.2d 1105 La.1982); State v. Moody, 393 So.2d 1212 (La.1982); State ex rel. Graffagnino v. King, 436 So.2d 559 (La. 1983). "It is the role of the fact finder to weigh the respective credibility of the witness and ... [the appellate court should] not *44 second guess the credibility determinations of the trier of fact beyond ... [the] sufficiency evaluations under the Jackson standard of review." Id. at 563, citing State v. Richardson, 425 So.2d 1228 (La.1983).
In order for the state to obtain a conviction, it must prove the elements of the crime beyond a reasonable doubt. We first address the claim of Consuela, who is attacking only one of her convictions, armed robbery. The elements of armed robbery are the taking of anything of value belonging to another from the person of another or from the person's immediate control by use of force or intimidation while armed with a dangerous weapon. See La.R.S. 14:64. Consuela argues that it was Gordon who ran to the Cadillac and demanded the occupants get out, and that she neither played a role in, nor said a word during the theft of the car. Therefore, she argues she cannot be guilty as a principal since she was neither concerned in the commission of the crime, nor did she aid or abet in its commission, nor did she directly or indirectly counsel or procure another to commit it. This argument is without merit. The evidence presented to the jury established that after Consuela gave Gordon the shotgun, she pulled a handgun out of her shoulder bag and proceeded to get into the back seat of the car Gordon was trying to enter. In fact, it appears, from testimony, that Consuela actually got in the car first, rather than simply following Gordon. Additionally, it appears that Consuela and Gordon had planned and discussed the escape while Gordon was in court.
It is not necessary that a principal to armed robbery handle the weapon, or act as a lookout; it is sufficient that the evidence prove that the principal was concerned with the commission of the crime. In State v. Johnson, 440 So.2d 197 (La.App. 3 Cir. 1983), writ denied, 444 So.2d 1240 (La.1984), the defendant was seen accompanying two men who later robbed a store. He was also seen with the men immediately after the robbery; plus, he drove the men away from the scene and received money from the robbery. Although the defendant was not present during the robbery, nor did he act as a lookout at the scene, the extent of his participation was such that he was convicted as a principal. In State v. Peters, 553 So.2d 1026 (La.App. 4 Cir.1989), the defendant's friend robbed two newspaper deliverymen of their truck by pointing a gun at the driver while the defendant simply distracted the passenger. The defendant was convicted as a principal to the theft of the truck since it was proven he was with the armed codefendant several hours before the crime, he did nothing to intervene or stop the robbery, got into the truck after the codefendant ordered the driver out, and was captured several hours later still in possession of the stolen truck. In Peters, the court ruled that the evidence did not merely prove the defendant was present at the scene, but proved the defendant was concerned in the commission of the theft of the truck.
Viewing the evidence presented in the case sub judice, in the light most favorable to the prosecution, we find the conviction of Consuela Gaines Thomas for armed robbery must be upheld.
Turning now to the argument of Gordon Ray Thomas; his claim was presented to the trial court in his motion in arrest of judgement. The defendant's claim is actually a claim of double jeopardy and not sufficiency of the evidence. This court set forth the rule concerning a claim of double jeopardy arising from a single chain of events in State v. Love, 602 So.2d 1014, 1019-1020 (La.App. 3 Cir. 1992):
The definition of double jeopardy is given in La.Code Crim.P. art. 591 which provides:
`No person shall be twice put in jeopardy of life or liberty for the same offense, except, when on his own motion, a new trial has been granted or judgment has been arrested, or where there has been a mistrial legally ordered under the provisions of Article 775 or ordered with the express consent of the defendant.'
La.Code Crim.P. art. 596 provides:
`Double jeopardy exists in a second trial only when the charge in that trial is:
(1) Identical with or a different grade of the same offense for which the defendant was in jeopardy in the first trial, *45 whether or not a responsive verdict could have been rendered in the first trial as to the charge in the second trial; or
(2) Based on a part of a continuous offense for which offense the defendant was in jeopardy in the first trial.'
Both the Fifth Amendment to the United States Constitution and Article 1, § 15 of the Louisiana Constitution guarantee that no person shall be twice placed in jeopardy for the same offense. The purpose of these provisions is to protect a person from a second prosecution after he has already been acquitted or convicted of that offense and also to protect an accused against multiple punishment for the same conduct. North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); State v. Vaughn, 431 So.2d 763 (La.1983).
Louisiana uses both the "Blockburger test" and the "same evidence test" in determining whether double jeopardy exists. La.Code Crim.P. art. 596; State v. Vaughn, supra, and cases cited therein. The "Blockburger test" was set out by the United States Supreme Court in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), where the court stated:
`... The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not ...'
The "same evidence test" has been adopted by the Louisiana Supreme Court and was explained by the court in State v. Steele, 387 So.2d 1175 (La.1980), as follows:
`If the evidence required to support a finding of guilt of one crime would also have supported conviction of the other, the two are the same offense under a plea of double jeopardy, and a defendant can be placed in jeopardy for only one. The test depends on the evidence necessary for conviction, not all the evidence introduced at trial ...
The `same evidence test' is somewhat broader in concept than Blockburger, the central idea being that one should not be punished (or put in jeopardy) twice for the same course of conduct.' (Citation omitted). Id. 387 So.2d at 1177 (La. 1980).
Therefore, `double jeopardy provisions protect an accused not only from a second prosecution on the same offense, but also from multiple punishments for the same criminal conduct.' State v. Vaughn, supra, at page 767, and cases cited therein.
However, an accused who commits separate and distinct offenses during the same criminal episode or transaction may be prosecuted and convicted for each offense without violating the principle of double jeopardy. State v. Nichols, 337 So.2d 1074 (La.1976). Louisiana has not adopted a `same transaction' test which would prohibit, on double jeopardy grounds, prosecutions for different crimes committed during one sequential, continuing course of conduct. City of Baton Rouge v. Jackson, 310 So.2d 596 (La.1975).
[Emphasis added.]
In the case of State v. Morris, 614 So.2d 180 (La.App. 3 Cir.1993), the defendant was convicted of three feloniessimple burglary, unauthorized use of a movable, and simple criminal damage to propertyall arising from his actions of entering a car dealer's lot, kicking out the rear window of a truck, entering the truck to "hot wire" it, and driving away with the truck. The defendant's actions took a few minutes, but he was convicted of the three different crimes committed during his continuous course of conduct.
When Gordon took control of the shotgun, he committed the crime of possession of a firearm by a convicted felon, a violation of La.R.S. 14:95.1, since he was a convicted felon[1] in possession of a firearm *46 and less than ten years had passed since his conviction. When the armed defendant ran to Mrs. Batton's automobile and demanded she get out, he committed the crime of armed robbery, a violation of La.R.S. 14:64, because he took something of value belonging to another from her immediate control by use of force or intimidation while armed with a dangerous weapon. Finally, as the defendant sped away from the deputies in the courthouse parking lot he committed the crime of aggravated escape, a violation of La.R.S. 14:110(C), because he intentionally departed from the legal custody of law enforcement officers under circumstances wherein human life was endangered. The evidence necessary to prove one of these offenses would not be sufficient to prove any of the other two offenses. Although the defendant's actions took a matter of minutes, he committed at least three different felonies; therefore, the defendant's argument is without merit.
Accordingly, we find the defendants' third assignment of error is without merit.

CONCLUSION
Accordingly, for the reasons stated above, the conviction and sentence of the defendant, Consuela Gaines Thomas, is reversed and vacated, and that this matter is remanded to the trial court for a new trial. The actions of the trial judge in limiting voir dire effectively denied the defendants, as well as the state, their rights to full voir dire as guaranteed by La. Const. art. 1, § 17 and La.Code Crim.P. art. 786.
CONVICTION REVERSED; SENTENCE VACATED; CASE REMANDED.
NOTES
[1] A defendant's conviction does not have to be final before a defendant can be charged and convicted of possession of firearm by a convicted felon. State v. Bailey, 461 So.2d 336 (La.App. 2 Cir.1984); see also, State v. Johnson, 94-1561 (La.App. 1 Cir. 10/6/95); 664 So.2d 141; State v. Washington, 621 So.2d 114 (La.App. 2 Cir.), writ denied, 626 So.2d 1177 (La.1993); State v. Carr, 487 So.2d 147 (La.App. 4 Cir. 1986). Therefore, the fact that Gordon's armed robbery convictions were not yet final does not prevent the defendant from being convicted of violating La.R.S. 14:95.1.