774 So.2d 374 (2000)
STATE of Louisiana
v.
Kevin Duane GOODLEY.
No. 00-846.
Court of Appeal of Louisiana, Third Circuit.
December 13, 2000.
Earl B. Taylor, District Attorney, Opelousas, LA, Counsel for State of Louisiana Plaintiff/Appellee.
Edward Kelly Bauman, La Appellate Project, Lake Charles, LA, Counsel for Kevin Duane Goodley Defendant/Appellant.
Court composed of Judge COOKS, Judge AMY, and Judge PICKETT.
PICKETT, Judge.

BACKGROUND
The defendant, Kevin Duane Goodley, was indicted for second degree murder, a violation of La. R.S. 14:30.1. He received a trial before a jury on January 10-11, 2000, and was found guilty as charged. April 20, 2000, the district court sentenced him to the mandatory term of life imprisonment without benefit of parole, probation, or suspension of sentence. The defendant appeals his conviction, assigning three errors.
In his first assignment of error the defendant argues insufficient evidence to sustain a conviction for second degree murder. The second assignment of error relates to the introduction of what he argues is irrelevant and prejudicial evidence *375 of other crimes. In his third assignment of error the defendant argues the trial court erred in failing to instruct the jury regarding the different grades of theft. Because we find merit in the third assignment of error, it is unnecessary to discuss the first two.

DISCUSSION
On October 21, 1998, the defendant and his cousin Mack Tezeno, a.k.a. Mack Gallow, stopped at Dupre's Grocery, an old country store in St. Landry Parish. The defendant was driving. His .22-caliber rifle was in the backseat.
There is some dispute as to what happened next. It is undisputed, however, that Mack Tezeno entered the store and killed the 90-year-old proprietor, Elta Dupre, as he slept in a chair in the living quarter adjacent to the store. Tezeno killed Mr. Dupre with the defendant's .22-caliber rifle.
Tezeno exited the store with the victim's.22 caliber pistol and some cash. He gave the defendant fourteen dollars. The pair then drove to Ville Platte, where each was staying at the time.
The defendant was seen at the store by a former Ville Platte policeman, Russell George. He recognized the defendant, who was sitting behind the steering wheel of his vehicle at the time Mr. George passed the store. Mr. George saw a second man with the defendant but could not identify him because he was wearing a hood and turned away as Mr. George passed.
There was certain evidence presented at trial for consideration by the jury which is important to this court's determination that the trial court committed reversible error in its instructions to the jury. This testimony pertains to items that were taken or possibly taken from the premises when the homicide occurred. Different witnesses testified as to different versions of what occurred at the store on the day of the homicide.
The defendant testified he went into the store, saw Mr. Dupre sleeping and left. Tezeno then took his gun and entered the store, he heard a gunshot, and Tezeno exited, giving him fourteen dollars.
Jeaneene Marie Riley testified that the defendant told her two different accounts of the robbery. In the first version he said he and Tezeno went into the store to rob it. He told Tezeno not to shoot Mr. Dupre. Goodley said he received $20 as his share of the robbery. In the second version the defendant told her he was outside in the car when he heard a gunshot. He went inside and saw Tezeno had killed a man. Goodley told Riley that Tezeno had used his gun.
Robert Wilson, a friend of the defendant, also testified. He said Goodley told him that he and Tezeno had robbed a store, and Tezeno had killed a man. The defendant did not mention getting any money from the robbery, but did say he had taken a case of antifreeze from the store. According to this version of the robbery, the defendant and Tezeno took the antifreeze while Dupre slept, then Tezeno went back into the store and killed Dupre while the defendant was in the car. Goodley then told Tezeno the shooting was unnecessary.
The State's theory was that an armed robbery had occurred, and the defendant was guilty as a principal to the offense of second degree murder, as the homicide occurred while the defendant and Tezeno were involved in the perpetration of armed robbery. La.R.S. 14:30.1(A)(2)(a).
General jury charges are governed by La.Code Crim.P. art. 802:
The court shall charge the jury:
(1) As to the law applicable to the case;
(2) That the jury is the judge of the law and of the facts on the question of guilt or innocence but that it has the duty to accept and to apply the law as given by the court; and

*376 (3) That the jury alone shall determine the weight and credibility of the evidence.
Also applicable in the matter before us is La.Code Crim.P. art. 804(B), which provides:
When there are several grades of an offense contained in a single count, the court shall charge the jury as to each grade of which the defendant could be found guilty. The court shall in that case also charge the jury that if it has a reasonable doubt as to any or all grades of the offense charged it shall find the defendant not guilty of that grade, or all grades of the offense, as the case may be.
La.Code Crim.P. art. 808 further provides:
If the jury or any member thereof, after having retired to deliberate upon the verdict, desires further charges, the officer in charge shall bring the jury into the courtroom, and the court shall in the presence of the defendant, his counsel, and the district attorney, further charge the jury. The further charge may be verbal.
After receiving its instructions from the court, the jury retired to deliberate. At that point, counsel for both sides indicated they were satisfied with the instructions. Later, the jury sent the court a note asking for definitions of theft, armed and simple robbery, manslaughter, and second degree murder. Our review shows that theft was not defined in the initial instructions, although the other crimes mentioned in the jury note had been. The jury also wanted to see the pictures that had been introduced, and the statements of Riley, Wilson, and George. The jury returned to the courtroom, and the following colloquy took place:
BY THE COURT: Ok. Let's come to order please. Let the record reflect that the Jury is in place. The defendant is in Court with Counsel and the State is represented. I've received a note from the Jury which I'll mark Jury Note # 1 for identification from the Jury asking certain questions and definitions. Alright. Listen, listen carefully. As to the statements you cannot have em. The law does not provide. You have to rely upon your memory.. from these witnesses. Pictures, you can have. I'll send those. Rodney, Bailiff take those. Alright. I'mma [sic] read for you again specific definitions that you asked for. R.S. 14:67 defines Theft. "Theft is the misappropriation or taking of anything of value which belongs to another either without the consent of the other to the misappropriation or taking or by means of fraudulent conduct, practices or representations." "An intent to deprive the other permanently whatever maybe the subject of the misappropriation or taking is essential." R.S. 14:64 defines Armed Robbery. "Armed Robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another by use of force or intimidation while armed with a dangerous weapon." R.S. 14:64 defines Simple Robbery. "Simple Robbery is taking of anything of value belonging to another from the person of another or that is in the immediate control of another by use of force or intimidation but not armed with a dangerous weapon." Second Degree MurderR.S. 14:30.1Felony Murder Doctrine. The defendant is charged with Second Degree Murder of Elta Dupre while engaged in the commission or attempted commission of an Armed Robbery or Simple Robbery. "Second Degree Murder is the killing of a human being when the offender is engaged in the commission or attempted commission of an Armed Robbery or Simple Robbery, even though he has no intent to kill or to inflict great bodily harm." Thus, in order to convict the defendant of Second Degree Murder you must find that there was a killing of a human being and that the killing occurred while the defendant was engaged in the commission *377 or attempted commission of an Armed Robbery or Simple Robbery and whether or not he had an intent to kill or to inflict great bodily harm. "Whoever commits the crime of Second Degree Murder shall be punished by life imprisonment at hard labor without benefit of parole, probation or suspension of sentence." The last definition is that of ManslaughterR.S. 14:31.
BY MR. LOPEZ: Excuse me Your Honor. Before you read that may we approach?
(AT THIS POINT THE ATTORNEYS APPROACH THE BENCH FOR A SIDEBAR)
BY THE COURT: Alright. ManslaughterR.S. 14:31. "Manslaughter is the killing of a human being when the defendant is engaged in the commission or attempted commission of a felony other than Armed Robbery or Simple Robbery or an intentional misdemeanor affecting the person even though there is no intent to kill such as a battery or an assault." And Battery is defined as, "The intentional use of force or violence upon the person of another or the intentional administration of a poison or noxious liquid, substance to another." Thus, in order to convict the defendant of Manslaughter you must find that the victim was killed and that the killing took place while the defendant was engaged in the commission or attempted commission or [sic] a felony other than Armed Robbery or Simple Robbery or an intentional misdemeanor affecting the person even though there was no intent to kill such as a Battery or an Assault. "Whoever commits Manslaughter shall be imprisoned at hard labor for not more than forty (40) years." Let all that be noted for the record. Let this be filed into the record as Jury Note # 1. Go back.
At that point the defendant noted for the record that it had asked the court to mention that theft is a non-enumerated felony for the purposes of the manslaughter statute. Apparently, he also asked that felony theft and misdemeanor theft be differentiated. Defense counsel stated:
BY THE COURT: Ok. Mr. Lopez ...
BY MR. LOPEZ: Your Honor, for the record we would like to uh, we would like the record to show that prior to, after the Jury had supplied this note asking for certain definitions of Manslaughter and Second Degree Murder in particular and a definition of theft that we requested that the Court in its definition of Manslaughter uh, in the non-enumerated felonies that, uh, make mention that Theft could have been, is an non-enumerated felony. As the Court pointed out examples of intentional misdemeanors affecting the person. It gave two (2) examples and those, those are two (2) of many examples but two (2) examples. One (1) of Assault and one (1) of Battery. And the, we had asked because of the Jury's specific request on Theft that the Court would include Theft as an example of a non-enumerated felony. A Theft, if they would find that a theft was committed and not an Armed Robbery uh, then of course, a responsive verdict of Manslaughter would be applicable. Now, as to the question of uh, as to the question of making a decision on the value, it's a value of over $100. There is testimony.. that there is a gun stolen. There was testimony that there was some stolen and the State feels that there's a case of whatever, antifreeze stolen. Uh, I think that uh, I think it would be, that the Jury could make a determination that the theft was over a $100 and the Court itself didn't even instruct the Jury. He just read the general definition of Theft in the first place. So, if you were reading the general definition of Theft, ... $500, it doesn't make any difference because, the Court didn't instruct as to, to the different grades, the felony grade of Theft and the misdemeanor grade of Theft. And we object. The Court of course refused to give that instruction and of course, we object.

*378 BY MR. TROMBLAY: Your Honor, to record, there is no evidence. It's been the defendant's position that Mack Tezeno acted alone in taking the money and the gun. Uh, the only evidence that supports what arguable of any Theft would be a case of antifreeze. Now, there's been no evidence whatsoever that, that this rolls to a felony grade offense. And uh, you can't charge the Jury and have them speculate as to the value of something. As to whether or not it rose to the level of felony grade. That evidence is simply not supported and their position for various reasons is not supported by the evidence.
BY THE COURT: Alright. Let the objection be noted for the record. However, it's been overruled. The Jury is out deliberating. Ok.
The court overruled the Defendant's objection, without stating reasons for the record.[1] At some point not recorded in the current transcript, the jury sent a second query to the court, asking: "Why is manslaughter an option?" The jury's apparent confusion is significant in light of the court's denial of the defendant's motion. Pursuant to the manslaughter statute, it was legally possible for the jury to find that Goodley was a principal to a felony other than robbery, i.e., felony theft, which would have mandated a conviction for manslaughter, rather than for second degree murder.[2]
Thus, there is some indication in the record that the jurors were confused. After the second charge, they retired to deliberate at 3:59 p.m., according to the minutes. At some point, they sent the second request to the judge asking, "Why is manslaughter an option?" Although the request was marked as Jury Note # 2 and entered into the record, it was not discussed on the record. The jury returned with its verdict at 5:30 p.m. according to the minutes. Although the current assignment does not address the second jury note, it indicates juror confusion.
Error occurred, even though the jury was instructed twice regarding the substance of the manslaughter statute, and was instructed regarding theft, as it requested. Although the defendant's argument supporting his objection is unclear, it appears that he was anxious to insure that the jury was informed that it had a viable basis for returning a verdict of manslaughter, rather than second degree murder. Although the jury was properly instructed regarding manslaughter, the current *379 record indicates they did not understand the instruction.

CONCLUSION
Manslaughter is clearly a responsive verdict to the offense charged and was a viable option at law for the jury. Because the jury was not thoroughly instructed as to all elements of the manslaughter statute, specifically as to felony theft being a non-enumerated felony and as to the difference between felony and misdemeanor theft, the defendant's conviction cannot stand.
Accordingly, the matter is remanded for a new trial.
CONVICTION REVERSED AND REMANDED FOR A NEW TRIAL.
AMY, J., dissents and would affirm the defendant's conviction and sentence.
NOTES
[1] At this point in the proceedings, the defendant had lost the statutory right to request further jury charges, pursuant to La.Code Crim.P. art. 807, as the article requires such requests to be submitted in writing before argument. See also State v. Corley, 97-235 (La.App. 3 Cir. 10/8/97); 703 So.2d 653, writ denied, 97-2845 (La.3/13/98); 712 So.2d 875. However, the jurisprudence has implicitly recognized defendant's right to object to courts' re-instructions of juries. See, e.g., State v. Hoffman, 98-3118 (La.4/11/00); 768 So.2d 542, also State v. Smith, 94-388 (La. App. 3 Cir. 11/9/94); 645 So.2d 817, reversed on other grounds, 94-3116 (La.10/16/95); 661 So.2d 442 and State v. Walker, 577 So.2d 770 (La.App. 2 Cir.), writ denied, 581 So.2d 704 (La.1991).
[2] It is not clear what led the jury to request the instruction on theft, as the defendant's close made only a brief reference to possible shoplifting of antifreeze. However, the state did not object to the instruction, and it does not appear to have been inappropriate, as the facts arguably could have supported felony theft.

The court may recharge the jury, or explain his charge in greater detail upon jury request, provided the court does not misstate the law. See State v. Williams, 464 So.2d 1058 (La.App. 1 Cir.1985), writ denied, 468 So.2d 571 (La.1985); State v. Ducksworth, 496 So.2d 624 (La.App. 1 Cir. 1986)....
State v. Heacox, 543 So.2d 101, 106 (La.App. 3 Cir.1989). See also La.Code Crim.P. art. 808.
We observe that the various cases enumerating "misdemeanor(s) directly affecting the person," pursuant to La.R.S. 14:31 A(2)(a) do not include theft. Therefore, a finding that he was guilty of a misdemeanor not directly affecting a person, theft, would have mandated an acquittal. However, this point does not appear to have been argued by the Defendant, and it is not raised on appeal.