PICKETT, Judge.

FACTS

The defendant, Kevin Duane Goodley, was indicted for second degree murder, a violation of La. R.S. 14:30.1. Following a trial before a jury on January 10-11, 2000, he was found guilty as charged. On April 20, 2000, the district court sentenced him to the mandatory term of life imprisonment without benefit of parole, probation, or suspension of sentence.
Subsequently, Defendant appealed his conviction, assigning three errors. This court reversed the conviction, holding the trial court had not thoroughly instructed the jury. State v. Goodley, 00-846 (La. App. 3 Cir. 12/13/00); 774 So.2d 374. However, the supreme court reversed this court and reinstated the conviction, holding the jury instructions were adequate. State v. Goodley, 01-0077 (La.6/21/02); 820 So.2d 478.
The case has been returned to this court for consideration of the two remaining assignments of error.
This court discussed the relevant facts in its previous opinion:
On October 21, 1998, the defendant and his cousin Mack Tezeno, a.k.a. Mack Gallow, stopped at Dupre’s Grocery, an old country store in St. Landry Parish. The defendant was driving. His .22-caliber rifle was in the backseat.
There is some dispute as to what happened next. It is undisputed, however, that Mack Tezeno entered the store and killed the 90-year-old proprietor, Elta *1167 Dupre, as he slept in a chair in the living quarter adjacent to the store. Tezeno killed Mr. Dupre with the defendant’s .22-caliber rifle.
Tezeno exited the store with the victim’s .22 caliber pistol and some cash. He gave the defendant fourteen dollars. The pair then drove to Ville Platte, where each was staying at the time.
The defendant was seen at the store by a former Ville Platte policeman, Russell George. He recognized the defendant, who was sitting behind the steering wheel of his vehicle at the time Mr. George | «.passed the store. Mr. George saw a second man with the defendant but could not identify him because he was wearing a hood and turned away as Mr. George passed.
Goodley, 774 So.2d at 375.

DISCUSSION

In his first assignment, the defendant argues the evidence adduced at trial was insufficient to support his second degree murder conviction. The review for sufficiency of the evidence arguments is settled, as this court has observed:
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, rehearing denied, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983); State v. Duncan, 420 So.2d 1105 (La.1982); State v. Moody, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the Jackson standard of review. See State ex rel Graffagnino, 436 So.2d 559 (citing State v. Richardson, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.
State v. Kennerson, 96-1518, pp. 4-5 (La. App. 3 Cir. 5/7/97); 695 So.2d 1367, 1371, after remand, 97-1682 (La.App. 3 Cir. 6/3/98); 715 So.2d 518.
The defendant was convicted as a principal to a felony-murder. The felony-murder doctrine is codified at La.R.S. 14:30.1(A)(2)(a):
A. Second degree murder is the killing of a human being:
(2)(a) When the offender is engaged in the perpetration or attempted perpetration of aggravated rape, forcible rape, aggravated arson, aggravated burglary, aggravated kidnapping, second degree kidnapping, aggravated escape, drive-by shooting, armed robbery, first degree robbery, or simple robbery, even though he has no intent to kill or to inflict great bodily harm. (Emphasis added).
IqThe law of principals is contained at La. R.S. 14:24:
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.
*1168 It is undisputed that Mack Tezeno killed the victim with the defendant’s .22 rifle. Thus, the state had to prove that the defendant aided or abetted the perpetration of a robbery, and that the victim was killed during the perpetration of said robbery.
The state’s theory was that an armed robbery had occurred. Armed robbery is defined at La.R.S. 14:64:
A. Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
Again, it is undisputed that Tezeno used a weapon, and the record also reveals that he took things of value, ie., the victim’s .22 pistol and cash. It is also reasonable to conclude that Tezeno’s use of the weapon facilitated the taking by eliminating any possible resistance. The defendant argued that a sleeping victim could not be the victim of an armed robbery, due to lack of awareness of the force applied. However, a victim need not be aware of the force being applied. State v. Brown, 96-1002, pp. 5-6 (La.App. 5 Cir. 4/9/97); 694 So.2d 435, 437-438, writ denied, 97-1310 (La.10/31/97); 703 So.2d 19.
We find the jury could reasonably have concluded that the defendant acted as a principal to an armed robbery and murder committed by Tezeno. The defendant drove the getaway car, provided the murder weapon, and accepted proceeds from the crime.
| ¿In another case involving a getaway driver’s role in an armed robbery, this court observed:
After reviewing the record, we conclude that a rational trier of fact could have found the Defendant possessed the requisite intent to assist [the co-defendant] in the commission of the armed robbery of [the victim]. Defendant played an integral role by operating the getaway car. During the robbery, the Defendant waited for [the co-defendant] while parked behind the bank. Following the robbery, [the co-defendant], wearing a mask or hood and carrying a black bag, entered the back seat of the vehicle, and the Defendant immediately drove him away from the scene. The Defendant then stopped the vehicle momentarily to allow [the co-defendant] to open the back door and release the red smoke from the exploded red dye packet. The Defendant attempted to elude a state trooper by traveling at high rates of speed until he lost control of the vehicle causing it to flip several times. When the vehicle came to a stop, the Defendant exited the driver’s side. The black bag containing the money stolen from the bank and the gun used in the robbery were found in the wrecked vehicle. The Defendant’s left thumb print was found on the clip or magazine which was attached to the gun.
State v. Valrie, 99-226 (La.App. 3 Cir. 10/13/99); 749 So.2d 11, 14, writ denied, 1999-3236 (La.4/20/00); 760 So.2d 343.
In another case, this court discussed relevant jurisprudence:
It is not necessary that a principal to armed robbery handle the weapon, or act as a lookout; it is sufficient that the evidence prove that the principal was concerned with the commission of the crime. In State v. Johnson, 440 So.2d 197 (La.App. 3 Cir.1983), writ denied, 444 So.2d 1240 (La.1984), the defendant was seen accompanying two men who later robbed a store. He was also seen *1169 with the men immediately after the robbery; plus, he drove the men away from the scene and received money from the robbery. Although the defendant was not present during the robbery, nor did he act as a lookout at the scene, the extent of his participation was such that he was convicted as a principal. In State v. Peters, 553 So.2d 1026 (La.App. 4 Cir.1989), the defendant’s friend robbed two newspaper deliverymen of their truck by pointing a gun at the driver while the defendant simply distracted the passenger. The defendant was convicted as a principal to the theft of the truck since it was proven he was with the armed codefendant several hours before the crime, he did nothing to intervene or stop the robbery, got into the truck after the codefendant ordered the driver out, and was captured several hours later still in possession of the stolen truck. In Peters, the court ruled that the evidence did not merely prove the defendant was present at the scene, but proved the defendant was concerned in the commission of the theft of the truck.
State v. Thomas, 95-1646, pp. 12-13 (La. App. 3 Cir. 5/8/96); 680 So.2d 37, 44. (Emphasis added).
The defendant testified that he and Tez-eno were on their way to Opelousas to buy tires, and that they pulled into Dupre’s to get matches. The defendant entered the store alone and saw Dupre was sleeping. He decided not to bother the elderly victim, so he went back outside. After he told Tezeno that Dupre was asleep, Tezeno exited the car, grabbed the .22 rifle from the back seat, and entered the store. The defendant testified that at that point he panicked and started the ear, but denied that Tezeno’s actions made him suspicious that a crime was being committed. He heard a gunshot, but remained outside, waiting for Tezeno, who returned to the car with an old pistol and cash. He stated that he had robbed the store, he gave fourteen dollars to the defendant, then they drove back to Ville Platte. However, prior to trial, the defendant told different versions of the robbery to different people.
Jeaneene Marie Riley, the sister of the defendant’s girlfriend, testified that he told her two different accounts of the robbery. The first time he told her about it, he said he and his cousin went to the store to rob it. He was inside during the robbery, and told his cousin not to shoot. According to this version, his take in the robbery was twenty dollars. He subsequently told Riley another version of events, in a telephone call from New Orleans. In that version, he was outside in the car when he heard a gunshot. He went inside and saw that his cousin had killed a man. He also told Riley that the killer had used his gun.
Robert Wilson, a friend of the defendant, also testified. He said that the defendant told him that he and Tezeno had robbed a store, and that Tezeno had killed a man. The defendant did not mention getting any money from the robbery, but did say that he had taken a case of antifreeze from the store. According to this version | fiof the robbery, the defendant and Tezeno took the antifreeze while Dupre slept, then Tezeno went back into the store and killed Dupre while the defendant was in the car. The defendant then told Tez-eno that the shooting was unnecessary. While recounting this version, the defendant and Wilson were riding in the getaway vehicle, the defendant’s blue Buick Regal. Tezeno flagged them down, and told the Defendant that he was going to Oklahoma.
*1170 Keeping in mind that the weight and credibility of the evidence were within the jury’s discretion, we find the defendant supplied sufficient information in his first account of the offense to support the conclusion that he was a principal to an armed robbery, during which a killing occurred. The jury was free to disbelieve the self-serving elements of his subsequent versions of the robbery. Added to the other evidence of his participation, as getaway driver and supplier of the weapon, the statements support his conviction. The defendant’s actions when Russell George drove by are also relevant. The men knew one another, and when George and the defendant made eye contact, both the defendant and co-defendant acted furtively, as if to conceal their identities.
Therefore, we find this assignment has no merit.
In his second assignment, the defendant argues the lower court erred by allowing the state to introduce improper “other crimes evidence.”
Before the jury entered for its first day of hearing evidence, the defendant made an oral Motion In Limine. He sought to exclude the introduction of his sawed-off shotgun, arguing that it had no connection to the crime at issue, and would prejudice his case. The state argued the defendant had possession of the shotgun during the crime, thus demonstrating intent. The court denied the defendant’s motion without ^reasons. The defendant re-urged his objection at trial, but it was overruled and the shotgun was admitted.
Other crimes evidence is governed by La.Code Evid. art. 404(B):
B. Other crimes, wrongs, or acts. (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
The first question in the present analysis is whether the shotgun was evidence of an other crime or bad act, at all. The state argues that the shotgun related to the res gestae of the offense. We find the shotgun was not related to the res gestae of the offense, because no evidence actually linked it to the crime. The defendant admitted owning it, and testified that it was in the trunk of the Regal during the robbery. Although the state attempted to suggest that the defendant made use of the shotgun, during the robbery, there is no evidence that the shotgun was used in the robbery.
With no evidence linking the weapon to the offense, the state’s suggestions that the defendant may have armed himself amount to mere speculation. Thus, the shotgun was irrelevant. Ordinarily, it would be questionable whether owning a sawed-off shotgun would necessarily be a “bad act.” However, the state emphasized that such a weapon is unlikely to have legitimate uses. In its opening, the state argued that the defendant’s “car was a rolling armed robbery kit. They were armed to the tee [sic],” and that “the evi *1171 dence is probably gonna [sic] show that he had a sawed off | sshotgun.” In its closing, the state apparently displayed the shotgun and argued that the defendant and Tezeno were “outfitted for an armed robbery.”
Thus, we find the shotgun constituted evidence of another “bad act,” and was inadmissible under La.Code Crim.P. art. 404(B). The state argues that the presence of the weapon showed that Goodley was a willing participant in the robbery, citing State v. Ledet, 337 So.2d 1126 (La.1976). Ledet was the getaway driver. Police recovered the co-defendant’s gun from the vehicle, and also recovered a pistol underneath the defendant’s seat. The trial court admitted the pistol over the defendant’s relevancy objection. Subsequently, the Louisiana Supreme Court affirmed the lower court’s action. The high court reasoned that the pistol was highly probative in establishing the defendant’s involvement, as he apparently realized the situation might require armament.
We find Ledet is distinguishable, because there is no evidence the shotgun in the present case ever left the trunk. Again, there is no evidence that the shotgun was in any way utilized in the robbery. The gun’s presence in the trunk of the car does not tend to show that Goodley was arming himself for a robbery, as it was not as readily accessible as the pistol in Ledet.
Nevertheless, we find the lower court’s error was harmless. Other crimes evidence is harmless if the verdict rendered is “surely unattributable” to the error. State v. Johnson, 94-1379 (La.11/27/95); 664 So.2d 94, 100, reconsideration denied, 94-1379 (La.4/8/96); 671 So.2d 332, citing Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). In Johnson, the mechanics of this analysis consisted of assessing the strength of the state’s case, without the evidence at issue. The Johnsoncowt held that the defendant’s prior guilty pleas to five counts of simple burglary were | ginadmissible other crimes evidence because the burglary charges were nolle pro-sequied by the state. However, the court also held that the error was harmless due to the strength of the state’s case, which included two eyewitnesses who saw the defendant commit the offense. Id. at 102. However, in State v. McArthur, 97-2918 (La.10/20/98); 719 So.2d 1037, the court held that the trial court’s error in admitting evidence of past attempted rape was not harmless. There were “numerous inconsistencies” in the victim’s testimony, and defense witnesses indicated the defendant and victim had a relationship and a history of mutual drug use. Id. at 1043.
The evidence against the defendant formed a solid case that he was a principal to the offense charged, although not an overwhelming one. The state proved beyond a reasonable doubt that the defendant was the getaway driver for, and accepted proceeds from, an armed robbery that resulted in a murder. Thus, he was a principal not only to the armed robbery, but to the felony-murder that resulted from the robbery.
The assignment has no merit, as the error was harmless.

ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. We find no errors patent.

CONCLUSION

The defendant’s conviction and sentence are affirmed.
AFFIRMED.
*1172 COOKS, J., concurs.
AMY, J., concurs and assigns written reasons.