# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## KA 07-1384

**STATE OF LOUISIANA**

**VERSUS**

**JEREMY DWAYNE SMITH**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF ACADIA, NO. 65845
HONORABLE KRISTIAN DENNIS EARLES, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## BILLY HOWARD EZELL
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Oswald A. Decuir, Marc T. Amy, and Billy Howard Ezell, Judges.

**AFFIRMED.**

**Michael Harson**
**District Attorney, Fifteenth Judicial District Court**
**P.O. Box 3306**
**Lafayette, LA 70502-3306**
**(337) 232-5170**
**Counsel for Plaintiff/Appellee:**
**State of Louisiana**

**Daniel James Stanford**
**Attorney at Law**
**117 Caillouet Place**
**Lafayette, LA 70501**
**(337) 232-2272**
**Counsel for Defendant/Appellant:**
**Jeremy Dwayne Smith**

**Frederick Lewis Welter**
**Assistant District Attorney**
**Fifteenth Judicial District Court**
**P. O. Box 288**
**Crowley, LA 70527**
**(318) 788-8831**
**Counsel for Plaintiff/Appellee:**
**State of Louisiana**

**EZELL, JUDGE:**

On July 23, 2004, an Acadia Parish Grand Jury indicted Defendant, Jeremy Dwayne Smith, for attempted second degree murder, a violation of La.R.S. 14:27 and La.R.S. 14:30.1, and armed robbery, a violation of La.R.S. 14:64. On January 23, 2007, the parties selected a jury, which heard evidence on January 24-26. Said jury returned a guilty verdict on both counts.

On August 8, 2007, the court sentenced Defendant to forty years at hard labor on the first count, and fifty years at hard labor on the second count. Defendant made an oral motion to reconsider sentence, which the court denied. On August 9, Defendant filed a written motion to reconsider sentence, which the court denied on August 13, 2007.

On August 9, 2007, Defendant filed a motion to appeal. The court observes that the motion includes trial court docket numbers 65608 and 65845. Although the record contains a bill of information bearing docket number 65608, it reflects no conviction and sentence on those charges. Therefore, an appeal in docket number 65608 is premature. The convictions and sentences discussed earlier proceeded under trial court docket number 65845 and are properly before this court.

Defendant now seeks review of his convictions for attempted second degree murder and armed robbery. He assigns a single error, challenging the sufficiency of the evidence. The convictions and sentences are affirmed.

## FACTS

On April 7, 2004, Defendant met with the victim, Thad Guidry, at a convenience store, called "Chimi-Chang," in Rayne, Louisiana. Guidry had contacted Defendant because he wanted to buy marijuana from him. After getting into Guidry's car, Defendant asked him for a ride down the street. After that ride, Defendant asked

1

Guidry for a ride to meet some friends who were fishing. The other men were not at the first location that Defendant named, so he asked Guidry to drive him to another area. The trip to the second location was also fruitless. Defendant then asked Guidry to take him to a location outside the Rayne city limits, near a rice research station between Rayne and Crowley. At some point, Defendant showed Guidry that he had a handgun but did not threaten him with it. In fact, he unloaded it and handed it to Guidry; once Guidry had looked at the weapon, he handed it back to Defendant. When they reached a gravel road near the research station, Defendant asked Guidry to stop so that he could urinate. Guidry complied, and both men got out of the car.

When Guidry turned around, Defendant was pointing his handgun at him. Defendant ordered Guidry to get in the trunk. Guidry refused, jumped into the car, and tried to drive away. However, the keys were gone. The Victim then tried to talk his way out the situation, but Defendant shot him twice and drove away in his car.

An area road crew happened upon the scene immediately after the shooting, and obtained help for Guidry. A doctor's subsequent examination showed that one bullet had entered Guidry's right side, passed across his chest (scraping the back of the breastbone), exited his left side, and entered his left arm. Another bullet struck him behind the neck and exited his back, above the left arm.

**ASSIGNMENT OF ERROR**

In his sole assignment of error, appellate counsel argues the evidence adduced at trial was not sufficient to support the conviction. The analysis for such claims is well settled:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d

126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

Defendant argues that the victim was not credible, and that the State failed to adduce forensic evidence linking him to the crime. There is no dispute that someone shot the victim and took his car and the items in it. However, Defendant claims he was not the offender. The supreme court has explained,

"when the key issue is the defendant's identity as the perpetrator, rather than whether the crime was committed, the State is required to negate any reasonable probability of misidentification. *State v. Weary*, 03-3067 (La.4/24/06), 931 So.2d 297 [*cert. denied*, __U.S.___, 127 S.Ct.; *State v. Neal*, 00-0674 (La.6/29/01), 796 So.2d 649 [*cert. denied*, 535 U.S. 940, 122 S.Ct. 1323 (2002)]. Positive identification by only one witness is sufficient to support a conviction. *Weary*, 03-3067 at p. 18, 931 So.2d at 311; *Neal*, 00-0674 at p. 11, 796 So.2d at 658; *State v. Mussall*, 523 So.2d 1305, 1311 (La.1988). It is the factfinder who weighs the respective credibilities of the witnesses, and this court will generally not second-guess those determinations. *State v. Bright*, 98-0398, p. 22 (La.4/11/00), 776 So.2d 1134, 1147."

*State v. Hughes*, 05-992, pp. 5-6 (La. 11/29/06), 943 So.2d 1047, 1051.

In the present case, the Victim made numerous identifications of Defendant as the man who shot him. When the road crew found him immediately after the shooting, he stated he had been shot by "Fice." An EMT (emergency medical technician) who arrived on the scene thought the Victim was close to death, so he asked who shot him. The Victim answered "Fice from Rayne." Detective Chade Gibson, of the Acadia Parish Sheriff's Office, testified that he spoke with the Victim

3

in the ambulance at the scene. According to Gibson, the Victim identified the shooter as "Fice," a black male from Rayne.

Gibson followed up by checking with Rayne police to see if they had any criminal records for a man named "Fice." Rayne authorities identified "Fice" as Defendant's nickname; thus, Gibson learned Defendant's name and obtained a picture of him. He placed the picture among others in a photographic line-up, which he showed to the Victim at the hospital. The Victim identified Defendant in the photo line-up. Later, police arrested Defendant at the home of a man named Don Sarver; Defendant had the Victim's cell phone in his possession. Later, Sarver contacted police and advised them that he had a set of car keys at his house and they had not been there before Defendant had come to the residence. Gibson's investigation revealed the keys were for the Victim's car, which investigators found in Houston, Texas.

Defendant took the stand in his own defense and acknowledged that the Victim called him on the morning of April 7, 2004. He testified that the Victim wanted to buy drugs from him. However, he claimed that he left Rayne and went to Crowley and thus, did not meet with the Victim that day. According to Defendant, the Victim called him again at approximately 1:00 p.m. The two men agreed to meet in a convenience store in Rayne. Defendant then called his friend (and distant cousin) Dante Williams and arranged for Williams to meet the Victim instead.

According to Defendant, he later received a phone call from a friend who told him that someone had shot the Victim, and that Defendant was rumored to be the shooter. He testified that he received a call from Williams, who told him that during the drug transaction, the Victim had pulled a knife, so Williams shot him. Defendant and Williams met at a McDonald's in Crowley. There, Williams advised he was

fleeing to Houston and gave Defendant the Victim's cell phone. On cross-examination, Defendant claimed that while "Fice" was his boyhood nickname, his current nickname is "Jubie."

Dante Williams testified similarly on this point. However, most of his account of the relevant events diverged from Defendant's. Williams testified that at the time of the shooting, he was living in Houston. Pursuant to earlier plans they had made, Defendant came to meet Williams in Houston. However, before Defendant arrived, a relative called Williams and warned him that Defendant was suspected of shooting a man. Williams had also received a call from Defendant, advising that he was driving into Houston in a car rented in exchange for drugs. Williams was surprised, because he thought Defendant was going to take a bus. According to Williams, the car Defendant was driving looked "like a brown Caprice," or a "[a] cop car." The Victim testified that he drove a Chevrolet Caprice and identified a car pictured in police photos as depicting his car. Claude Rochon testified that when he and other road workers happened upon the scene, they saw a car speeding away. He described it as "maybe purplish, kind of a small car." On cross-examination, he described it as "maybe a tan or a burgundy, you know, but kind of faded color like." He explained it was difficult for him to give a better description, because the car was at a distance when he saw it. Earlier, he stated the car was approximately three city blocks away from him at that time, before it sped away.

State witness Exaviar Guidry testified that he previously dated Defendant's sister, had known him for years, and knew him as "Fice." At about 12:15 p.m., on the day of the shooting, he dropped off Defendant at "Chimi-Chang," a store in Rayne, near city hall. He saw Defendant get into a car that looked like a Crown Victoria with tinted windows. In an exhibit photo, the rear passenger windows appear to be tinted.

5

However, on cross-examination, Guidry stated the car he saw did not look like a police car. Guidry's testimony negated Defendant's testimony on direct that he left Rayne at 9:00 or 10:00 a.m. and stayed in Crowley the rest of the day. However, on redirect, Defendant stated that he rode with Guidry before leaving town.

The evidence needed to convict Defendant came from the Victim himself. Defendant took the stand and attempted to establish an alibi and shift the blame to Dante Williams and to the Victim himself. In convicting Defendant, the jury clearly chose to believe the victim. As the jurisprudence cited earlier shows, such credibility assessments are not to be second-guessed by reviewing courts.

This court has explained:

> As mentioned in *Kennerson*, credibility assessments are within the province of the fact-finder, in this case the jury. A jury may "accept or reject, in whole or in part," any witness's testimony. *State v. Silman*, 95-0154, p. 12 (La.11/27/95), 663 So.2d 27, 28. Clearly, the jury believed the victim's version of events, and Hypolite's brief offers no concrete reason why the jury's conclusion should be considered unreasonable. This court will overturn a jury's credibility assessment only when a witness's own testimony demonstrates that the witness's ability to perceive events was impaired in some way. *See, e.g., State v. Bourque*, 94-291 (La.App. 3 Cir. 11/2/94), 649 So.2d 670, wherein one eyewitness had consumed a large amount of alcohol before the offense and the other was a minor who believed all white men looked alike, and defendant was white.
>
> In the present case, there was no indication that Ms. Chatman was unable to objectively perceive events, although during cross-examination she testified that she had consumed two twenty-two-ounce beers while visiting her friend's house earlier in the evening. It was not clear exactly when, or over what a period, she drank the beers. The testimony did not indicate that she was intoxicated, or otherwise unable to objectively perceive events, at the time of the offense.

*State v. Hypolite*, 04-1658, pp. 4-5 (La.App. 3 Cir. 6/1/05), 903 So.2d 1275, 1279, *writ denied*, 06-618 (La. 9/22/06), 937 So.2d 381.

In the present case, the Victim admitted that he had taken one prescription Lortab for pain and had inhaled "two or three lungs full" of marijuana on the morning

6

of the shooting. However, as in *Hypolite*, the testimony did not indicate the Victim was unable to objectively perceive events at the time of the shooting.

Further, we observed that the Victim knew Defendant before the shooting; when he was a postman, he had delivered mail to Defendant. Although he claimed they had met only two months before the offense, Defendant acknowledged knowing the Victim. It is unlikely the Victim misidentified a person he already knew. Also, the record suggests the Victim was able to drive his car competently; he drove in Rayne, and beyond its city limits, without incident. Further, the Victim had seen Defendant's weapon and ammunition shortly before. As a former Marine, the victim had knowledge of firearms and identified the ammunition as nine-millimeter, full metal jacket rounds. Mark Kurowski, of the Acadiana Crime Lab, confirmed that a bullet removed from the Victim was a nine-millimeter full metal jacket round.

For the reasons discussed, we find the jury's decision to convict the Defendant was reasonable. Viewed in the light most favorable to the prosecution, the evidence adduced at trial supports the convictions.

## CONCLUSION

The convictions are affirmed.

**AFFIRMED.**

7