# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 12-1356


STATE OF LOUISIANA

VERSUS

JAMARIO KATO

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. C17497
HONORABLE ERIC ROGER HARRINGTON, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## SHANNON J. GREMILLION
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.

**AFFIRMED.**

**Van H. Kyzar**
**District Attorney, Tenth Judicial District Court**
**Lala B. Sylvester**
**Assistant District Attorney**
**P. O. Box 838**
**Natchitoches, LA 71458-0838**
**(318) 357-2214**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Edward J. Marquet**
**Louisiana Appellate Project**
**Post Office Box 53733**
**Lafayette, LA 70505-3733**
**(337) 237-6841**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Jamario Kato**

**GREMILLION, Judge.**

Defendant, Jamario Kato, and Dominique Sibley met Darious Rogers at an apartment complex in Natchitoches Parish and discussed robbing the victim, Tremaine Jackson. Rogers handed them a "bar" of Xanax on behalf of the victim, who had been selling the drug. Rogers then returned upstairs to the apartment of the victim's girlfriend and handed the victim the three dollars he had received from Sibley. The victim was irritated because he was selling the Xanax for five dollars per bar. Rogers claimed to have been robbed. The victim walked outside in an effort to get the rest of the money with Rogers right behind him.

The victim leaned over the balcony and told Kato and Sibley that he needed the rest of the money. They began running up the stairs, cursing and telling the victim to "give it up." The victim did not respond favorably, and Sibley shot him three times, killing him.

A Natchitoches Parish grand jury indicted Defendant, Sibley, and Rogers for second degree murder, a violation of La.R.S. 14:30.1, and armed robbery, a violation of La.R.S. 14:64. A jury found Defendant guilty of second degree murder and attempted armed robbery. The trial court sentenced him to life imprisonment for second degree murder and ten years at hard labor for attempted armed robbery. The sentences are to run concurrently.

Defendant now appeals his convictions and sentences, assigning two errors. Defendant's convictions and sentences are affirmed.

### ASSIGNMENT OF ERROR NUMBER ONE

In his first assignment of error, Defendant argues that the evidence adduced against him at trial was insufficient to support his convictions. He complains that

his convictions rested upon "the uncorroborated and illogical testimony of a drugged-out convicted felon."

The general analysis for such a claim is settled:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

The first portion of Defendant's argument attacks the credibility of Rogers, the sole eyewitness in the case. However, some portions of the argument go to the elements of the crime rather than the witness's credibility. The case Defendant cites, *State v. Hollins*, 08-1033 (La. 6/26/09), 15 So.3d 69, stands for the principle that a jury should be instructed that an accomplice's uncorroborated testimony should be viewed with great caution. Defendant does not argue whether the jury was so instructed in his case; rather, he claims that a principle of caution regarding accomplice testimony applies to his sufficiency of the evidence argument.

Applying a principle more specific to witness credibility in the context of a sufficiency review, we have stated:

> As mentioned in *Kennerson*, credibility assessments are within the province of the fact-finder, in this case the jury. A jury may "accept or reject, in whole or in part,"

2

any witness's testimony. *State v. Silman*, 95-0154, p. 12 (La.11/27/95), 663 So.2d 27, 28. Clearly, the jury believed the victim's version of events, and Hypolite's brief offers no concrete reason why the jury's conclusion should be considered unreasonable. This court will overturn a jury's credibility assessment only when a witness's own testimony demonstrates that the witness's ability to perceive events was impaired in some way. *See, e.g., State v. Bourque*, 94-291 (La.App. 3 Cir. 11/2/94), 649 So.2d 670, wherein one eyewitness had consumed a large amount of alcohol before the offense and the other was a minor who believed all white men looked alike, and defendant was white.

In the present case, there was no indication that Ms. Chatman was unable to objectively perceive events, although during cross-examination she testified that she had consumed two twenty-two-ounce beers while visiting her friend's house earlier in the evening. It was not clear exactly when, or over what a period, she drank the beers. The testimony did not indicate that she was intoxicated, or otherwise unable to objectively perceive events, at the time of the offense.

*State v. Hypolite*, 04-1658, pp. 4-5 (La.App. 3 Cir. 6/1/05), 903 So.2d 1275, 1279, *writ denied*, 06-618 (La.9/22/06), 937 So.2d 381.

In the present case, the Victim admitted that he had taken one prescription Lortab for pain and had inhaled "two or three lungs full" of marijuana on the morning of the shooting. However, as in *Hypolite*, the testimony did not indicate the Victim was unable to objectively perceive events at the time of the shooting.

Further, we observed that the Victim knew Defendant before the shooting; when he was a postman, he had delivered mail to Defendant. Although he claimed they had met only two months before the offense, Defendant acknowledged knowing the Victim. It is unlikely the Victim misidentified a person he already knew.

*State v. Smith*, 07-1384, pp. 6-7 (La.App. 3 Cir. 5/28/08), 984 So.2d 238, 242-43.

During his testimony, Rogers admitted to being "high" at the time of the shooting, as he had taken a single Xanax pill before arriving at the apartment; while there, he drank a beer while he ate a meal. However, much like the witness in *Smith*, he knew Defendant prior to the shooting and identified him at trial. Also,

3

Defendant bought Xanax from the victim and had ridden with Rogers and the victim earlier that day. Further, Rogers indicated that the shock of the shooting brought him to his senses. Also, Rogers' account of the offense was lucid and gave no indication that he had difficulty perceiving events at the time of the shooting. In light of the jurisprudence, Defendant's argument lacks merit.

Defendant also notes that Rogers admitted that he told a number of lies during the course of the offense and in the initial stages of the investigation. The following colloquy occurred on cross-examination:

Q.     And you know what perjury is . . . do you?

A.     (No response recorded).

Q.     You know what perjury is?

A.     Yes Sir.

Q.     What is perjury?

A.     I think just blaming somebody the [sic] he didn't even do.

Q.     If I told you perjury is lying under oath, would you agree with that?

A.     Yes Sir.

Q.     And you are here today to tell the truth?

A.     Yes Sir.

Q.     But you do know how to lie, don't you Mr. Rogers?

A.     Yes Sir.

        . . . .

Q.     So, it comes natural to you to lie to people, right?

A.     Yes Sir.

Q.     Have you ever lied on anybody before?

A.    No Sir.

Q.    You never accused anybody of anything before?

A.    No Sir.

Q.    This is the first time you have ever accused anybody of doing anything?

A.    Yes Sir.

Q.    And the first time you ever sold drugs was that you sold them to Mr. Kato?

A.    Yes Sir.

Q.    And the first time you went to go buy some drugs you went with JT. . . TJ?

A.    Yes Sir.

Q.    TJ considered you to be his brother?

A.    Yes Sir.

During the extensive cross-examination, Defendant admitted several times that he lied to the victim and lied in his initial remarks to police.

During re-direct, the following colloquy occurred:

Q.    All right. Let me ask you something, Darious. Uh, you've been through a lot. On January the 25th, the day after this happened. [sic] Did you tell Detective Armstrong, Detective Williams, and Detective Walker what happened?

A.    (No response recorded).

Q.    Did you tell them what actually had happened?

A.    Yes Sir.

Q.    Were you telling them the truth back on January the 25th, 2011. Were you telling them the truth when you came in there and said, "I got something to get off my chest"?

A.    Yes Sir.

Q.    Is that the same thing you told this jury today?

5

A.     Yes Sir.

Q.     Is that the scaredest you ever been in your life?

A.     Yes Sir.

In response to a question during re-cross, Rogers indicated that when he made his truthful account of events to police, he apologized for lying to them earlier. Clearly, the jury was made aware of the witness's lies but still found him credible regarding the offense. As the jurisprudence makes clear, a jury's credibility assessment is not to be second-guessed on appeal. This court has only a cold record to analyze, while the jury was able to view the witness's demeanor and hear the inflections in his voice. Thus, this argument lacks merit.

Separately, we note Defendant's characterization of Rogers's testimony as "uncorroborated." Rogers was the only eyewitness at trial. Tommy Wiley, a neighbor of the victim's girlfriend, Lillie Wallace, heard two or three gunshots and saw two people running down the stairs shortly thereafter. Wallace did not witness the shooting because she was inside her apartment when it occurred. She testified that before the shooting, Rogers went downstairs; when he returned, he had a "strange look on his face" that she and the victim both noticed. Rogers then claimed that he had been robbed. As she did not want any trouble at the apartment complex, Wallace offered to give Rogers the small amount of cash he was missing. However, Rogers pressured the victim to go outside. There was an impact of some sort on the outside of the door, and the two men opened it and stepped out. She heard two male voices cursing and threatening the victim and also threatening to hurt Wallace and her baby. She dialed 911 and then heard multiple gunshots. She pulled the bleeding victim into her apartment. While her testimony contradicted

6

that of Rogers on several points, it lent support to the scenario of two men attempting to rob the victim. The general cast of her testimony indicated that Rogers may have had a greater role in the attempted robbery than he acknowledged. However, the jury could logically have believed his description of Defendant's role in the offense even if it believed Rogers was minimizing his own part in it.

Defendant's next argument is that he was not a principal to the crime as the record indicates that Sibley, the shooter, acted alone. The following has become an oft cited principle of Louisiana law: "One need not possess specific intent to kill or inflict great bodily harm to be a principal to a second degree felony murder." *See State v. Hill*, 98-1087, p. 9 (La.App. 5 Cir. 8/31/99), 742 So.2d 690, 696, *writ denied*, 99-2848 (La. 3/24/00), 758 So.2d 147." *State v. Johnson*, 11-336, p. 11 (La.App. 5 Cir. 2/14/12), 91 So.3d 365, 372. This is particularly true when "the defendant aided or abetted the perpetration of a robbery, and that the victim was killed during the perpetration of said robbery." *State v. Goodley*, 00-846, p. 3 (La.App. 3 Cir. 12/11/02), 832 So.2d 1165, 1167-68

In this case, Defendant and Sibley talked to Rogers about robbing the victim. When the victim came outside, they both demanded that he "give it up." When he offered verbal resistance, both men ran up the stairs, and Sibley shot the victim.

As already discussed, the jury apparently found Rogers to be a credible witness. His testimony set forth the facts just recited, which demonstrate that Defendant actively participated in the attempted robbery. Unlike *Goodley*, the present case involves an *attempted* armed robbery. Attempt is governed by La.R.S. 14:27(A), which states,

7

Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.[1]

The facts demonstrated through the testimony of Rogers show that Defendant had the requisite intent and committed acts in furtherance of the offense. Clearly, a homicide resulted. For the reasons discussed, this argument lacks merit.

### ASSIGNMENT OF ERROR NUMBER TWO

In his second assignment of error, Defendant argues that his life sentence for murder is improperly disparate, since the shooter received a forty-year sentence. He implies that he was punished for exercising his right to trial but does not pursue this particular argument. Also, he does not mention his ten-year sentence for attempted armed robbery.

Defendant cites *State v. Amos*, 97-1381 (La.App. 3 Cir. 06/03/98), 716 So.2d 902, for the principle that disparity between the sentences of co-defendants is a factor to be considered in appellate review. We have recently explained:

There is no requirement that co-defendants receive equal sentences. *See State v. Taylor*, 01-1638 (La.1/14/03), 838 So.2d 729, *cert. denied*, 540 U.S. 1103, 124 S.Ct. 1036, 157 L.Ed.2d 886 (2004); *State v. Rogers*, 405 So.2d 829 (La.1981). Notwithstanding, in *State v. Quimby*, 419 So.2d 951, 962 (La.1982), our supreme court stated:

This does not mean that disparity in sentences of co-defendants with similar backgrounds, charged with similar participation in identical crimes may not be considered as a factor in determining whether a sentence is excessive and out of proportion to the severity of a crime. It is only a factor to be considered along with all other appropriate considerations when there is no reasonable basis in the record for the disparity. *State v. Sims*, 410 So.2d 1082 (La.1982).

---

[1]Attempted armed robbery will support a second degree murder conviction. La.R.S. 14:30.1(A)(2).

8

"In providing a wide range of criminal sanctions for violations of a statute, the legislature obviously intends that the [trial court] shall exercise [its] sentencing discretion to impose sentences gradated according to the individualized circumstances of the offense and of the offender." *State v. Sepulvado*, 367 So.2d 762, 766 (La.1979). Indeed, the individualization of a sentence cannot be accomplished "without independently considering the merits of each case." *State v. Day*, 414 So.2d 349, 352 (La.1982). Simply stated, "[d]isparities are inherent in a system where punishment is tailored to fit the defendant and the crime." *Id.*

Against that backdrop, it is clear that the trial court in the present case heeded those statutory requirements and jurisprudential admonitions. As reflected in the colloquy at the hearing on the defendant's motion to reconsider sentence, the State, without any assertion to the contrary by the defendant, emphasized that the defendant was more culpable of this crime than his co-defendants. In making that assertion, the State stressed that it was the defendant who approached the victim, entered her home without her permission, brandished the knife, and stole from her. Accordingly, we find our review of the record fully justifies the disparity in the sentences of the co-defendants and exhibits that the trial court truly individualized the sentence to this defendant.

*State v. Prejean*, 10-480, pp. 4-5 (La.App. 3 Cir. 11/3/10), 50 So.3d 249, 253.

In the present case, as the State notes in its brief and the trial court noted at sentencing, a conviction for second degree murder carries a mandatory life term. La.R.S 14:30.1(B). The supreme court has explained:

[T]o rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that:

[he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.

*Young*, 94-1636 at pp. 5-6, 663 So.2d at 528 (Plotkin, J., concurring).

*State v. Johnson*, 97-1906, p. 8 (La. 3/4/98), 709 So.2d 672, 676.

9

This is not the exceptional case contemplated by *Johnson*. Louisiana jurisprudence would be significantly impacted if being a principal but not the shooter in a murder case were held to necessitate a sentence less than life. Defendant was convicted of second degree murder and received the statutorily-required sentence. Sibley was able to plead to manslaughter, a different charge, and he received a different sentence. For the reasons discussed, this assignment lacks merit.

## DECREE

The convictions and the life sentence for second degree murder are affirmed.

**AFFIRMED**.